UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RONALD LOWRY,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 13-cv-03304 NC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 13, 14 |

    Plaintiff Ronald Lowry seeks judicial review of the Commissioner of Social Security's denial of his claims for disability benefits and for Supplemental Security Income. Lowry argues that his claim was wrongfully denied because the Administrative Law Judge (ALJ) improperly weighed the medical evidence and neglected to take testimony from a vocational expert in determining Lowry was not disabled. The Court finds that the ALJ properly evaluated the medical evidence, and that there is substantial evidence to support her finding that Lowry was not disabled. The Court also finds that the ALJ did not err in applying the Medical-Vocational Guidelines without the assistance of a vocational expert. The Court therefore grants defendant's motion for summary judgment and denies plaintiff's cross-motion for summary judgment.

# I. BACKGROUND

## A. Agency Review

On June 18, 2010, Lowry applied for disability insurance benefits and for Supplemental Security Income, claiming multiple ailments rendered him disabled and unable to work since December 1, 2004. AR 136-159. Lowry listed a number of medical conditions including: "cervical disc and neuropathy; lumbar disc and neuropathy; abnormal gait; arthritis throughout body; pain in right shoulder and arm; and cervical and lumbar pain, arthritis, neuropathy, pain." AR 171. The Social Security Administration ("SSA") initially denied his claims on December 3, 2010, and following reconsideration, denied his claims a second time on January 11, 2011. AR 110, 119. The SSA determined that Lowry's impairment "[did] not preclude [him] from all work activities." AR 110-11.

## B. Administrative Review

Lowry subsequently requested administrative review of the SSA's decision. AR 128. A hearing before ALJ Betty Barbeito occurred on February 9, 2012. AR 58-89. Lowry was represented by counsel at this hearing.

### 1. The Hearing

Lowry testified that he used alcohol to alleviate the pain resulting from his various physical ailments. AR 72. This behavior went back to 1988, when he first underwent spinal surgery. *Id.* Lowry testified that the pain in his neck also affected his right shoulder, right forearm, and his back to the point where he was unable to lift more than five pounds with his right arm. AR 73. Additionally, his right forearm had atrophied and he felt numbness in his right arm from the forearm up to the neck. AR 75.

Lowry testified that although he had experienced this disabling numbness and pain for twenty-three years, he had only applied for disability benefits in 2010. He explained that he used whisky to mitigate the pain. AR 77-78.

Lowry also spoke to the difficulty he had walking, testifying that he often experienced pain in his neck when he walked even distances as short as a block or two. AR 80. This pain in his neck also occurred while sitting when he was not supporting his

neck with his arm or other external support.  AR 81-83.

Lowry acknowledged smoking a single pack of cigarettes every three days and drinking a pint of whisky daily.  AR 85.  Lowry testified that he had gone to the emergency room a few times in the past two years to acquire pain medication, but that during his fourth visit the doctor told him that Lowry could only receive additional pain medication from his personal physician.  AR 86.

### 2. The ALJ's Findings

The ALJ concluded that Lowry was "under a disability, but that a substance use disorders [sic] is a contributing factor material to the determination of disability," and accordingly that Lowry was not "disabled under the Social Security Act at any time from the date of the application was filed through the date of this decision."  AR 95.  The ALJ arrived at this decision following the five-step evaluation process for determining whether an individual is disabled.  AR 96-97; *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

Step one asks whether a claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.920.  At step two, the ALJ evaluates whether the claimant has a medically severe impairment or combination of impairments.  *Id.*  At step three, the ALJ considers whether the impairment or combination of impairments meets or equals any of the listed impairments under 20 C.F.R. pt. 404, subpt. P, app. 1.  *Id.*  At step four, the ALJ assesses whether the claimant is capable of performing her past relevant work.  *Id.*  At step five, the ALJ examines whether the claimant has the residual functional capacity ("RFC") to perform any other substantial gainful activity in the national economy.  *Id.*  If the ALJ reaches step five and determines that the claimant has the RFC to perform other gainful activity, the claimant is not disabled.  *Id.*

Here, at step one, the ALJ found that Lowry had not engaged in any substantial gainful activity since the disability application date.  AR 97.  At step two, the ALJ determined that the medical records supported that Lowry suffered from two severe impairments: a right shoulder impairment, and cognitive impairment secondary to a long history of alcohol use.  *Id.*  The ALJ also found that although Lowry suffered from alcohol-

induced hepatitis and pancreatitis, the record showed an absence of treatment for these conditions and that the record indicated that both conditions could be controlled if Lowry stopped his alcohol use. AR 97-98.

At step three, the ALJ concluded that if Lowry "stopped the substance use, [Lowry] would not have an impairment or combination of impairments" that met or medically equaled a listed impairment. AR 99; *see* 20 C.F.R. § 416.920(d). First, the ALJ determined that "[Lowry] does not allege, nor do the records show, that [Lowry's] physical impairments meet or medically equal a listed impairment, with or without alcohol use." AR 99. As to Lowry's mental impairments, the ALJ concluded that, "if [Lowry] stopped the substance use, the remaining limitations would not meet or medically equal the criteria of listing 12.02 [of 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. 416.920(d)]." *Id.* The ALJ found that Lowry would have moderate limitation in social functioning if he stopped his substance use, and that nothing in the record indicated he would suffer "marked limitations." *Id.* The ALJ also determined that Lowry would suffer from moderate difficulties with regard to concentration, persistence, and pace, should he stop his substance use. *Id.*

In light of the severe impairments noted at step two, the ALJ found that if Lowry stopped his substance use, "the remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments." AR 98. Thus, the ALJ moved to step four to determine Lowry's RFC. She determined that Lowry had the RFC to:

> [P]erform light work as defined in 20 CFR 416.967(b) except that he is restricted to pushing, pulling, and lifting no more than ten pounds occasionally and frequently with his right upper extremity. He has no additional limitations with his left upper extremity. He is precluded from climbing ladders, ropes, and scaffolds. He may only occasionally crawl. He may perform all other postural activities frequently. He is further restricted to simple, repetitive work with limited public contact.

AR 100. In so finding, the ALJ stressed that she considered "all symptoms and the extent

to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

In considering the symptoms, the ALJ engaged in a two-step process. *Id.* First, the ALJ considered whether there was "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce [Lowry's] pain or other symptoms." *Id.* Second, the ALJ evaluated to what extent the symptoms limited Lowry's "ability to do basic work activities." *Id.* At this second step, whenever the symptoms were not supported by objective medical evidence, the ALJ made a finding considering the credibility of Lowry's statements as to his limitations. AR 100-101. The ALJ found that even if Lowry stopped drinking, his "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 101. However, she also determined that to the extent Lowry's statements regarding the "intensity, persistence[,] and limiting effects of [the] symptoms" conflicted with the objective evidence and physician opinions, they were not credible. *Id.* Any restrictions greater than that of light work with the specified limitations were "unsupported by the medical record." AR 103.

At step five, the ALJ considered what other work Lowry would be able to perform given his age, education, work experience, and RFC, and whether this work was available in significant numbers in the national economy. AR 104. She determined that if Lowry stopped his substance use, the additional limitations on his physical capabilities noted in the RFC determination would "have little or no effect in the occupational base of unskilled light work." *Id.* Therefore, the ALJ concluded that a finding of "not disabled" was appropriate. *Id.*

**C.  The Appeals Council Review**

Lowry appealed the ALJ's decision to the Appeals Council on April 9, 2012. AR 1. On May 30, 2013, the Appeals Council denied his request for review. *Id.* Lowry then initiated this action for judicial review on August 16, 2013. Dkt. No. 1. All parties consented to the jurisdiction of a magistrate judge. Dkt. Nos. 11-12.

## II. STANDARD OF REVIEW

A district court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). The decision of the Commissioner should only be disturbed if it is not supported by substantial evidence or if it is based on legal error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Substantial evidence is evidence that a reasonable mind would accept as adequate to support the conclusion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("[It] is more than a mere scintilla but less than a preponderance."). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

When reviewing the ALJ's weighing of medical evidence, additional standards apply. *Id.*; 20 C.F.R. § 416.927. Generally, "the opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician." *Ryan*, 528 F.3d at 1198. In addition, if a claimant has a treatment relationship with a provider, and that provider's opinion is supported by clinical evidence and not inconsistent with the record, the provider will be given controlling weight. 20 C.F.R. § 416.927(c)(2). "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (internal citation omitted). However, "[e]ven if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999).

## III. DISCUSSION

Lowry makes two arguments for why the ALJ erred in finding him not disabled. First, Lowry contends that the ALJ improperly granted greater weight to the opinion of non-examining physicians instead of examining physicians. Dkt. No. 13 at 12-13. Relatedly, Lowry argues that the ALJ failed to properly consider all of the physical impairments that

Case No. 13-cv-03304 NC
ORDER RE: SUMMARY JUDGMENT            6

Lowry suffered. *Id.* at 12.  Lowry does not challenge the ALJ's assessment of Lowry's psychological and cognitive impairments, nor the ALJ's determination that these mental impairments would be significantly mitigated if Lowry stopped his substance use. *See id.* (stating that Lowry did not allege psychological and cognitive impairments and acknowledging that "the mental impairments found by the ALJ might be resolved absent [Lowry's] alcohol abuse . . . ."). Second, Lowry argues that the ALJ committed legal error in not taking testimony from a vocational expert in determining whether employment existed in sufficient numbers considering Lowry's limitations. *Id.* at 13. In both instances, the Court disagrees, and finds the ALJ's determinations were proper.

## A. The ALJ Properly Weighed the Medical Evidence.

Lowry argues that the ALJ improperly discounted the opinion of examining physician Dr. Fernando Tuvera, and improperly adopted the conclusions of non-examining Disability Determination Services (DDS) physicians. *Id.* at 12; Dkt. No. 15 at 2. In response, defendant contends the ALJ properly gave greater weight to the state agency reviewing physicians as their assessments of Lowry's alleged disability "showed greater consistency with the record as a whole." Dkt. No. 5; *see* AR 103. The crucial difference between the medical opinions is whether Lowry's ability to push, pull, or lift was restricted with respect to both his right and left extremity, or was isolated to his right extremity.

Lowry also claims that the conclusions of the non-examining physicians are contrary to the treatment notes of treating physician Dr. Wong. Dkt. No 13 at 8. In response, defendant argues that Dr. Wong's reports contain no opinion regarding Lowry's functional capacity or work-related limitations, and therefore do not qualify as medical opinions. Dkt. No. 14 at 5.

Even if contradicted by other medical evidence, "the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Regennitter*, 166 F.3d at 1298-99. Although generally the opinion of an examining physician is given more weight than the opinion of a non-examining source, "when it is an examining physician's opinion that the ALJ has rejected in reliance

on the testimony of a nonexamining advisor, reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Here, the ALJ stated she considered conflicting medical opinions regarding Lowry's physical limitations from two distinct sources: Dr. Tuvera, the examining physician who found that Lowry was restricted to "light work" with "pushing, pulling, and lifting no more than 10 pounds with either extremity"; and the opinions of two DDS doctors that indicated restrictions of "light work" with "pushing, pulling, and lifting no more than ten pounds occasionally and frequently with his right upper extremity[, and . . .] no additional limitations with his left upper extremity." AR 100, 103; *see* AR 255-259 (noting occasional handling and overhead right upper extremity limitations only and no limits with the left upper extremity); AR 312-319 (determining that the right upper extremity overhead reach and handling was limited to occasional "due to weakness and atrophy"). The ALJ rejected the limitations proposed by Dr. Tuvera, because "the evidence [did] not document the claimant's upper left extremity limitations." AR 103. Instead, multiple medical reports indicated that Lowry suffered restrictions in his right extremity that were either non-existent, or more limited, in his left extremity. For example, in November 2010, Lowry was determined to have less right arm upper extremity strength than in his left arm. AR 217. In October 2010, Dr. Tuvera wrote that that Lowry had decreased motor strength in his right handgrip but normal motor strength in his left handgrip. AR 213. In July 2011, Dr. Wong found similar discrepancies, observing atrophy and reduced strength present in Lowry's right but no obvious atrophy or deficiencies in strength in the left arm. AR 332-33. Because the non-examining physicians' opinions are thus supported by other evidence in the record, the Court will not second-guess the ALJ's decision to credit those opinions while discounting the opinion of the examining physician.

Lowry also contends that the ALJ ignored the "impression contained in [treating physician] Dr. Wong's reports," that Lowry claims supports the more restrictive opinion of

Dr. Tuvera. Dkt. No. 13 at 12. But as noted by defendant, these reports contain no subjective assessment of Lowry's physical limitations with regard to his ability to perform functional tasks such as lifting, pulling, pushing, etc., only medical findings with regard to his strength and flexibility. Dkt. No. 14 at 5; *see* AR 322-342. Therefore, the treatment notes are not medical opinions of a treating physician. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physician and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite your impairment(s), and your physical or mental restrictions."). Therefore, the ALJ did not err in not giving the treatment notes from Dr. Wong "controlling weight" in her analysis. *See generally* 20 C.F.R. § 416.927(c)(2) (describing the guidelines for weighing the opinion evidence of a treating physician). Instead the ALJ properly addressed the treatment notes as medical evidence:

> Dr. Wong noted various physical abnormalities during his examination. These include moderately restricted range of motion in the cervical spine, mild tenderness of the rotator cuff on the right with 'equivocally positive impingement sign' on the right, atrophy on the right upper extremity, and cervical spine changes as described above.

AR 102. These medical findings are not inconsistent with the ALJ's determination limiting Lowry to light work with the additional limitations in using his right arm. *See* AR 333.

**B.     The ALJ Did Not Err In Not Taking Testimony From a Vocational Expert.**

In determining that there would be a significant number of jobs in the national economy that Lowry could perform if he stopped his substance use, the ALJ considered Lowry's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines (grids), 20 C.F.R. pt. 404, subpt. P, app. 2. Lowry contends that the ALJ committed legal error by not seeking the assistance of a vocational expert. Dkt. No. 13 at 14.

"[A] vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid." *Hoopai v. Astrue*, 499

Case No. 13-cv-03304 NC
ORDER RE: SUMMARY JUDGMENT            9

F.3d 1071, 1076 (9th Cir. 2007).  Significant and sufficiently severe limitations at step five must be greater than those found at step two, "otherwise the two steps would collapse and a vocational expert would be required in every case in which a step-two determination of severity is made.  This would defeat the purpose of the grids . . . ." *Id.*  Here Lowry has made no showing of any significant and sufficiently severe limitations above those noted in step two such as to make the grids inapplicable in this case. *See id.*  As the ALJ determined that Lowry would have at most moderate non-exertional limitations if he stopped his alcohol use the Court finds this does not meet the standard required to demand the testimony of a vocational expert. *See* AR 99.  Therefore, the ALJ did not commit error in applying the Medical-Vocational Guidelines without the assistance of a vocational expert.

## CONCLUSION

After considering the record, the Court finds that substantial evidence supports the ALJ's conclusion that Lowry was not disabled.  Therefore, plaintiff's motion for summary judgment is DENIED, Defendant's cross-motion for summary judgment is GRANTED, and the final decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Date:  July 31, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge